Amendment 328, § 6.11, Ala. Const. of 1901, provides in pertinent part, "The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts . . . Theserules may be changed by a general act of statewideapplication." (Emphasis supplied.)
In 1987, the legislature adopted Act No. 87-189, Ala. Acts 1987, which was later codified as § 6-5-551, Ala. Code 1975. In full, § 6-5-551 provides:
 "In any action for injury, damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission
alleged by plaintiff to render the health care provider liable to plaintiff. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Plaintiff shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief can be granted."
(Emphasis supplied.)
I believe that § 6-5-551 is "a general act of statewide application" that changes the Rules of Civil Procedure as they apply to medical malpractice actions against health care providers. As I see it, the clear legislative intent behind §6-5-551 is to give defendant health care providers at least 90 days' pre-trial notice of a plaintiff's allegations against which they will be required to defend at trial. I agree with the majority and with Justice Houston, however, that this notice can come through a pre-trial order or amended pre-trial order, as long as that order is served on the defendants atleast 90 days before trial.
Section 6-5-551 requires a plaintiff in an action against a health care provider to make "a detailed specification and factual description of each act and omission" allegedly breaching the applicable standard of care. Under § 6-5-551, a defendant is required to object to a complaint that is not clear, either by a Rule 12(b)(6), Ala.R.Civ.P., motion to dismiss or by an objection to the introduction of evidence at trial. My review of the record reveals that Baptist Montclair objected at trial to the Wilsons' introduction of testimony concerning alleged acts or omissions for which no timely advance notice, as required by the statute, was given. I must dissent today because, as I read the record, the trial court allowed the plaintiffs' expert to testify to acts and omissions not covered by the complaint and/or the amended pre-trial order. A comparison of the complaint and the amended pre-trial order with the plaintiff's expert testimony illustrates my point.
The complaint contains four basic allegations. These allegations read:
 "[1] Defendants did negligently render or fail to render proper medical care within the standard of care to Myra and Dana Jean Wilson.
". . . .
 [2] Specifically, plaintiffs aver that said defendants failed to perform a Caesarean section on a timely basis and said failure to perform a Caesarean section on *Page 1341 
a timely basis was a timely cause of injury to Myra Wilson which resulted in loss of oxygen, asphyxiation and severe brain damage, as well as other injuries to Dana Jean Wilson, deceased.
". . . .
 "Defendant, Baptist Medical Center-Montclair, . . . was negligent through its nursing staff in failing to determine that the baby, Dana Jean Wilson, was in breech position and could not be delivered in the position in which she was in.
 "Further, that said defendant through its employees failed to take appropriate action once its employees learned of fetal distress and the breech position of the baby."
(R. at 2-4; numbering supplied.)
Additionally, the amended pre-trial order mentions eight other allegations made by the plaintiff. These allegations read:
 "That Baptist Medical Center-Montclair failed to have adequate OB policies and procedures for handling patients such as Mrs. Wilson being permitted a trial of labor after having prior C-Section;
 "that at the time Mrs. Wilson was permitted a trial of labor, the delivery room was not set up for immediate C-Section, including availability of an anesthesiologist;
 "that Baptist Montclair's policies and procedures were inadequate in that it was determined Mrs. Wilson was in trouble, the doctor was notified, that no back up plan for immediate [action] in event the doctor was tied up with another patient or failed to respond to the call was existent or adhered to;
 "that Baptist Montclair failed to provide adequate nursing coverage;
 "a neonatologist was not notified or on the premises in the event a C-Section was required;
 "Baptist Montclair failed to provide adequate anesthesia coverage;
 "that the nursing staff was negligent in that they failed to respond appropriately under the circumstances; and
 "that Baptist Montclair was negligent in connection with contents of anesthesiology contract regarding availability of coverage."
(R. at 38-39; numbering supplied.)
In its brief to this Court, Baptist Montclair cites 16 alleged breaches of the standard of care to which the plaintiffs' medical expert testified. Basically, these 16 alleged breaches are as follows:
 (1) that the patient was not properly prepared for her attempt at a vaginal delivery;
 (2) that the nurse failed to advise Dr. Orso of the patient's desire for a C-section;
 (3) that the patient was not properly set up for an attempt at a vaginal delivery;
 (4) that the nurse should have requested an IV in case an emergency arose;
 (5) that the nurse should have notified a physician of anything deviant from the regular course of labor;
 (6) that the nurse did not appropriately evaluate the pelvic examination when she examined the patient at 5:20;
 (7) that the nurses, upon Mrs. Wilson's admission to the hospital, should have perceived that she was in labor;
 (8) that if Nurse Little had related to Dr. Orso the appropriate cervical status he would have acted differently;
 (9) that the patient should have been typed and crossed for blood upon admission;
 (10) that the nurse failed to get an order concerning cross-typing of the patient's blood;
 (11) that the nurses failed to note the significance of the absence of contractions of the uterus while performing their examination of the plaintiff;
 (12) that the nurse failed to recognize the signs or symptoms of a ruptured uterus;
 (13) that if Nurse Little had notified the doctor of the cervical change, the bleeding and the decreased fetal heart tones, a reasonably prudent physician would have performed an emergency C-section earlier than one was performed; *Page 1342 
 (14) that the nurse should have started oxygen on Mrs. Wilson to get increased oxygen to the baby;
 (15) that the nurses should have perceived appropriate signs of a ruptured uterus and that these signs should have been related to Dr. Orso; and
 (16) that from all these deviations, the plaintiff's medical expert felt that the nurse and the hospital were negligent in caring for Mrs. Wilson and her baby during labor.
(See, Appellant's Brief at 13-14; R. at 446-47, 476-80, 488-90.)
By interpreting the complaint and the amended pre-trial order liberally in favor of the plaintiffs, I conclude that alleged breaches 1, 2, 6, 8, and 13 were arguably covered by the complaint or by the amended pre-trial order. Clearly, however, alleged breaches 3, 4, 5, 7, 9, 10, 11, 12, 14, 15, and 16 were not covered. I would reverse the judgment here because the trial court allowed the plaintiffs' expert to testify to alleged acts or omissions for which the defendants were not given the timely pre-trial notice required by § 6-5-551. Respectfully, I dissent.